SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00405-IM** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **CRISTIAN LAINES-HERNANDEZ,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 27 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant, a street-level fentanyl dealer, was involved in selling an incredibly addictive, destructive, and deadly poison that has been devastating the community.  Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, and the defendant's personal history and characteristics the government believes the requested sentence is both reasonable and justified.  The defendant will also very likely be deported to Honduras as a result of his conviction.

**Government's Sentencing Memorandum**                                                    **Page 1**

A.      **Summary of Proceedings.**

On January 15, 2026, the defendant pled guilty to Count 1 of the Indictment which charged him with the Possession with Intent to Distribute of Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).  The maximum sentence the Court may impose is a term of 40 years' imprisonment, a fine of $5,000,000, and at least four years of supervised release.  There is also a potential mandatory minimum sentence of five years' imprisonment.  The count of conviction carries a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government has no objection to the PSR and believes the facts underlying the defendant's count of conviction (PSR ¶¶ 22 - 27); Sentencing Guideline calculations (PSR ¶¶ 32 - 41); and, personal history and characteristics (PSR ¶¶ 44 - 74) are accurately outlined in both the PSR and plea agreement.  In his plea agreement defendant admitted that:

> [O]n or about January 18, 2025, here within the District of Oregon, he possessed 45 bags of prepackaged fentanyl which weighed approximately 339 grams.  Defendant possessed the fentanyl for purposes of further distribution.  Trained drug investigators would also testify that the amount of fentanyl seized and the way in which it was packaged indicated it was possessed for purposes of further distribution.  Fentanyl is a Schedule II controlled substance.

Plea Agreement ¶ 6.

On January 18, 2025, the defendant was initially arrested on state charges and subsequently released from custody on January 22, 2025.  PSR ¶ 24.  On September 8, 2025, as part of a separate drug trafficking investigation, the defendant was once again arrested, this time by officers from the Multnomah County Sheriff's Office Special Investigation's Unit and he was lodged into the jail on federal charges.  PSR ¶¶ 25-26.  The prior state case was then adopted for

**Government's Sentencing Memorandum**                                          **Page 2**

federal prosecution.  The defendant has been held in federal custody since his September 8.

2025, federal arrest.

**B.      Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider

the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4).

"The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind

throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting

*Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin

by determining the applicable Guideline range." *Id*.

Based upon the amount of fentanyl the defendant possessed with intent to distribute the

parties agree that his initial Base Offense Level is 28, pursuant to U.S.S.G. § 1B1.3 and

2D1.1(a).  PSR ¶ 32, Plea Agreement ¶ 8.

Because the defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and

USSG § 2D1.1(b)(18), the parties are asking the Court to grant him a two-level downward

departure in his Sentencing Guidelines.  PSR ¶ 33, Plea Agreement ¶ 9.

Because the defendant also qualifies as a "Zero Point Offender," pursuant to USSG

§ 4C1.1, the parties will recommend a two-level downward adjustment in his Sentencing

Guidelines range.  PSR ¶ 38, Plea Agreement ¶ 10.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG. §

3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense

level.  PSR ¶¶ 39 - 40, Plea Agreement ¶ 11.

///

**Government's Sentencing Memorandum**                                        **Page 3**

Prior to any additional departures or variances, the defendant's initial Adjusted Offense Level is 21.  With a Criminal History Category of I, defendant's initial advisory sentencing guideline range is 37 to 46 months' imprisonment.

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, how similarly situated defendants have been handled by the USAO and the courts, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a three-level downward variance in his overall offense level.  Plea Agreement ¶ 12.  The U.S. Probation Office has concurred in the request for a variance; however they have sought the equivalent of a four-level downward variance.  PSR Sentencing Recommendation at *1.

The government's three-level 3553(a) reduction would result in an Adjusted Offense Level of 18 and with a Criminal History Category of I, and advisory sentencing guideline range of 27 to 33 months' imprisonment.

Defendant has been in federal custody since the federal arrest on September 8, 2025.

**C.    Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 27 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant was selling fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating the community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA

**Government's Sentencing Memorandum**                                                    **Page 4**

region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening.  For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death.  *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024).  In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses.  *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023).  Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths.  *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023).  In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths.  OREGON HEALTH AUTHORITY OREGON DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024).  In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl.  *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025).  In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]."  *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

///

**Government's Sentencing Memorandum**                    **Page 5**

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon. *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in  2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

The defendant was a street-level dealer selling an extremely deadly poison.  He fed poison to people often living in a state of despair who are deeply addicted to a substance that they know can likely kill them.  We have no doubt that the defendant came to the United States to escape the poverty he experienced in Honduras.  However, that experience does not provide any justification or excuse for the harm he then in turn propagated upon others here within Portland, Oregon.  Fentanyl kills.  Even in very small amounts, fentanyl is a deadly poison and

///

**Government's Sentencing Memorandum**                                                    **Page 6**

this defendant distributed that poison for the sole purpose of making money – and without any regard for the harm he was causing others.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 27 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

There are no counts to be dismissed.

There is an appeal waiver.

Following his time in custody the defendant will likely be deported to Honduras.

Dated: May 6, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney

**Government's Sentencing Memorandum**                                                              **Page 7**